MARTIN GLICKFELD, ESQUIRE
State Bar No. 95346
LAW OFFICES OF MARTIN GLICKFELD
2133 Lombard at Fillmore
San Francisco, CA 94123
Telephone: (415) 441-7491

Attorney for Creditors and Plaintiffs
WILTON MARSHALL, JR.
and WILLIE MAE MARSHALL

**FILED**
FEB 0 5 2010
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

**ECF - Exempt**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA-SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>BETTE CARR-WALTON, JAMES WALTON,<br>WALTON & WALTON REAL ESTATE<br>COMPANY<br><br>                Debtors<br><br>WILTON MARSHALL, JR. and WILLIE MAE MARSHALL<br><br>                Plaintiffs,<br><br>vs.<br><br>BETTE CARR-WALTON, JAMES WALTON,<br>WALTON & WALTON REAL ESTATE<br>COMPANY, and DOES 1 to 10, inclusive<br><br>                Debtors/Defendants | CASE NO.: 08-32217<br><br>Chapter 7<br><br>Adversary No.: 09-3068<br><br>**PRE-TRIAL CONFERENCE STATEMENT**<br><br>Date: February 12, 2010<br>Time: 11:00 a.m.<br>Ctrm: Hon. Thomas E. Carlson<br>        235 Pine Street, 23rd Floor<br>        San Francisco, CA |

## **PRELIMINARY STATEMENT**

Plaintiffs Wilton and Willie Mae Marshall, despite their best efforts, were unable to obtain the cooperation necessary from debtors/defendants to file a Joint Pre-Trial Conference Statement and, therefore, are compelled to file their own separate statement.

PRE-TRIAL CONFERENCE STATEMENT         1

Case: 09-03068    Doc# 18    Filed: 02/05/10    Entered: 02/05/10 16:25:16    Page 1 of 8

## 1. Substance of the Action

This case involves a claim by Wilton and Willie Mae Marshall that they were defrauded by the Waltons in connection with a residential real estate transaction.

The Marshalls' daughter, Karen, owned a home in San Leandro. She wanted to sell the home, but there was no urgency to do so. Karen's brother, Darrell, who was a Muni driver at the time, was a good friend of James Walton. In addition, Betty Carr-Walton had handled a prior transaction for Karen involving the purchase of a condo in Burlingame. In September of 2006, Karen signed a written listing agreement with Walton Real Estate identifying James Walton as the listing agent. The property did not sell and the listing expired in December 2006.

By March of 2007, Darrell had obtained his real estate license. He was hired by the Waltons. This was his first real estate job. He had no prior experience and had handled no transactions before he went to work for Walton Real Estate. Karen agreed that Walton Real Estate could again attempt to sell her property.

In March 2007, the home had a $300,000 mortgage with a 5% interest rate. There was a second Deed of Trust securing a $100,000 loan to Karen from a friend, Helen Liu. Liu was not pressing Karen for payment on the loan and Karen was having no problems making her mortgage payments.

The Marshalls contend that, in this context, Betty Carr-Walton orchestrated a sale of the residence from Karen to her parents in order to generate a real estate commission and a mortgage broker fee and that she did so by making false statements to the Marshalls about the necessity of a sale, the nature of the transaction and the loans available.

The Marshalls are retired and in their 70's. Mr. Marshall was a Muni bus operator during his working years. At the time of this transaction, the Marshalls had their own home. They had no need or desire to purchase Karen's residence either as an investment or to live in. They did have an abiding desire, as they had all of their lives, to help their daughter if she was in need and they were prepared to do whatever they felt was necessary to "bail" her out if they

were convinced it was in her best interest to do so even if that seemed contrary to her wishes. Darrell, while nominally listed as the agent in the transaction, had zero experience in real estate or obtaining financing and essentially did nothing in this transaction. He trusted the Waltons to treat his parents fairly.

According to Wilton Marshall, on numerous occasions, Betty Carr-Walton told him that he had to do something because Helen Liu was pressing his daughter for payment, Karen couldn't make the mortgage payments, and unless he stepped in to help her, Karen would lose the property. Although the Marshalls ultimately ended up actually purchasing the property, they were somewhat confused as to the precise nature of the transaction in which they were entering. If there had been a true necessity for Mr. and Mrs. Marshall to help out, there were other alternatives available such as taking over the mortgage payment, taking out an equity line or re-financing sufficiently to pay Ms. Liu off. None of those options were presented to or discussed with the Marshalls. None of those options would have generated $25,000 in combined commissions and mortgage broker fees, as this transaction did. Again, the Marshalls contend that the only reasons they participated in this transaction was because Betty Carr-Walton lied to them and convinced them they needed to save their daughter. For better or worse, the Marshalls chose to believe Betty regardless of their daughter's explanations.

The Marshalls purchased the property in June 2007 for $550,000. The purchase was financed by a first mortgage in excess of $400,00 with an effective interest rate of 8% and a line of credit in the amount of $82,000 at 10%. Helen Liu got paid off. The Waltons received $25,000 in real estate commissions and mortgage broker fees. There will be evidence that, during this time period, Betty Carr-Walton conducted meetings in which she instructed sales staff how to "encourage" their clients to agree to loans that were not necessarily favorable to them but would result in a higher commission to Walton Real Estate.

The Waltons have a very different version of events. According to them, Darrell handled all aspects of the transaction, including arranging financing, and Betty merely supervised. Betty Carr-Walton contends that she had only one conversation with Mr. Marshall.

PRE-TRIAL CONFERENCE STATEMENT       3

Case: 09-03068   Doc# 18   Filed: 02/05/10   Entered: 02/05/10 16:25:16   Page 3 of 8

It occurred after the purchase/sale contract was entered into. It was initiated by Mr. Marshall and consisted of him telling her he had received various financing scenarios presented to him by Darrell and liked the loan package ultimately used to finance the sale.

When Darrell discovered the details of the transaction, in particular the loans Betty put his parents in, both he and Karen were incensed. Darrell confronted his friend James who admitted that there had been wrongdoing. James told Darrell he would make things right. He wrote to Wilton Marshall and agreed in writing that he would pay the pre-payment penalty on their loan if Mr. Marshall sold the property.

Mr. Walton says that this account is untrue. He says his offer to pay the pre-payment penalty was not made as an acknowledgment of wrongdoing but, rather, was his way of promoting business.

The evidence at trial will show that the property is worth at least $150,000 less than the purchase price and that the Marshalls have on-going damages represented by the costs incurred to service the mortgage and pay taxes and insurance.

## 2. Undisputed Facts

The following facts are undisputed:

1. Walton Real Estate listed the subject property beginning in September 2006 pursuant to a written listing agreement.

2. The property did not sell.

3. In or about March 2007, the Waltons employed Darrell Marshall as a real estate agent.

4. Darrell Marshall had never been an agent in a real estate transaction and had never arranged for financing.

5. The Waltons represented both the seller and the buyer in connection with the subject transaction.

6. At the time of the transaction, the Marshalls had their own home, had no intention of moving and were not looking for a house in San Leandro as an investment

property..

7. The loans secured by the property prior to the sale to the Marshalls were just over $400,000.

8. Helen Liu was owed $100,000; she had a second Deed of Trust on the property but was not pressing Karen Marshall for re-payment of her loan.

9. There is no evidence that Karen Marshall was having any problem making her mortgage payments.

10. The Waltons received a real estate commission of over $13,000 from the sale to the Marshalls.

11. The Waltons received a mortgage broker commission of over $9,000 from the sale to the Marshalls.

12. Subsequent to the transaction, James Walton agreed in writing to pay the pre-payment penalties should the Marshalls wish to sell the residence.

13. The Marshalls have continued to make payments on the property since they bought it and have made other and further necessary payments on the property for property taxes and insurance.

14. The property is worth approximately $150,000 less than the price paid by the Marshalls.

### 3. Disputed Facts

The critical, material factual disputes in this case are the following:

1. The Marshall contend that Darrell played only a nominal role in the transaction and that Betty Carr-Walton handled both the sale and financing. The Waltons contend this is untrue and that Darrell handled the entire matter, including financing.

2. The Marshalls contend that the only reason they bought the property was because Betty Carr-Walton told them that unless they did so, Karen would lose the property. Betty Carr-Walton denies that she said any such thing. She says she had only one conversation with Mr. Marshall after the sales contract was entered into when he called to tell her he liked their loan.

Case: 09-03068  Doc# 18  Filed: 02/05/10  Entered: 02/05/10 16:25:16  Page 5 of 8

### 4. Disputed Legal Issues

There do not appear to be any disputed legal issues at this time.

### 5. Witnesses to Be Called

The parties anticipate that the following witnesses will testify in this action:

1. Wilton Marshall
2. Willie Mae Marshall
3. Darrell Marshall
4. Karen Marshall
5. Helen Liu
6. James Walton
7. Betty Carr-Walton
8. Francisco Moreno

### 6. Estimated Time of Trial

The parties estimate that the trial of this matter will take two (2) court days.

### 7. Other Matters

There may be insurance coverage that would apply to claims made against the Waltons. Counsel for the Waltons has represented that coverage has been denied without further details. Despite repeated requests for more information, none has been provided. As the Court may recall, there is a pending state court action which has been stayed. It may be appropriate, should the Court deem it so, to continue the trial of this matter for a brief period of time to allow investigation of the insurance issues to determine whether this action should be stayed while the Marshalls pursue their state court action against the insurance proceeds only, or to make other appropriate orders on this issue.

///

///

///

///

| | | |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | Dated: Feb. 5, 2010 | LAW OFFICES OF MARTIN GLICKFELD |
| 3 | | By: _____ |
| 4 | | Martin Glickfeld |
| 5 | | Attorney for Creditors and Plaintiffs WILTON MARSHALL, JR. and WILLIE MAE MARSHALL |

11  C:\CLIENTS\MARSHALL, W\Walton (Real Prop)\Federal\Pleadings\Pre-Trial Conf. Stmt.PLD.wpd

# DECLARATION OF SERVICE BY MAIL
(Code Civ. Proc. §1013a(3), 2015.5 C.C.P.)

I, the undersigned, declare as follows:

I am now and at all times mentioned herein have been a citizen of the United States, over the age of eighteen years, and am not a party to the within action. My business address is 2133 Lombard Street, San Francisco, California 94123.

On the date indicated below, I served the within

PRE-TRIAL CONFERENCE STATEMENT

on the below parties in this action by placing true copies thereof in sealed envelopes, addressed as follows:

Baron J. Drexel
Law Offices of Baron J. Drexel
212 Ninth Street, Suite 401
Oakland, CA 94607
Tel: (510) 444-3184
Fax: (510) 444-3181

in the following manner:

__X__ **By US Mail:** I placed a true and correct copy of said document in a sealed envelope with postage thereon fully prepaid, deposited for collection and mailing pursuant to the ordinary business practice of this office which is that correspondence for mailing is collected and deposited with the United States Postal Service on the same day in the ordinary course of business.

____ **By Facsimile:** I caused such document to be faxed to the addressee and number shown above, wherein such fax is transmitted that same day in the ordinary course of business.

____ **By Email:** I caused such document to be emailed to the addressee and address shown above, wherein such email is transmitted that same day in the ordinary course of business.

____ **By Personal Delivery:** I personally delivered a true and correct copy of said document(s) in a sealed envelope to the addressee shown above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Francisco, California, on February 5, 2010.

_/s/ Susan Abbott_
Susan Abbott