Baron J. Drexel, CBN 132529
Law Offices of Baron J. Drexel
212 Ninth Street, Suite 401
Oakland, California 94607
Telephone: (510) 444-3184
Facsimile: (510) 444-3181
E-mail: drexlex@sbcglobal.net

Attorney for Debtors/Defendants

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BETTE CARR-WALTON, JAMES WALTON, WALTON & WALTON REAL ESTATE COMPANY,<br>        Debtors. | Case No. 08-32217<br>  (Chapter 7)<br>Adversary Case No. 09-03068<br><br>DEFENDANTS' STATUS CONFERENCE STATEMENT |
| WILTON MARSHALL, JR. and WILLIE MAE MARSHALL,<br><br>        Plaintiffs,<br>vs.<br><br>BETTE CARR-WALTON, JAMES WALTON, WALTON & WALTON REAL ESTATE COMPANY, and DOES 1 to 10, inclusive,<br><br>        Defendants. | Hearing Date: February 12, 2010<br>        Time: 11:00 a.m.<br>        Dept.: Courtroom 23 |

This Statement is filed by defendants. Plaintiff's counsel and defendant's counsel conferred but were unable to work out agreement on a joint statement.

## I. Undisputed Facts[1]

*Parties.* Plaintiffs are Wilton Marshall, Jr. and Willie Mae Marshall. They were the buyers of a certain property in San Leandro, California. The seller and former owner of this property is their daughter Karen Marshall. The listing and selling real estate sales agent for the subject sale transaction, which included obtaining a loan for the purchase, was Darrell V. Marshall, the son of plaintiffs and brother of seller Karen Marshall.

Defendants are Bette Carr-Walton and her husband James Walton. Walton & Walton Real Estate Company is a named defendant but it is not a separate legal entity; it is the business name under which Bette Walton operates her brokerage activities. Darrell V. Marshall was a real estate agent associated with Bette Walton. James Walton did not act as a sales agent in the subject transaction but was the original listing agent for the property and was friends with Wilton Marshall, Jr. and Darrell Marshall. All three were Muni bus drivers.

*Events.*

James Walton listed the subject property from October 1, 2006 to January 1, 2007 pursuant to a listing agreement for $699,000.00 The price was reduced one time to $670,000, but it did not sell. Karen Marshall, the owner and daughter of plaintiffs, had purchased a condominium in Burlingame in September 2006. The defendants understood that Karen wanted to sell her San Leandro property because she had purchased the Burlingame condominium.

---

[1] Defendants have conducted no discovery, therefore, defendants relate what facts they believe to be undisputed based upon statements of plaintiffs' counsel and documents. Where the facts are what the Marshalls, their daughter or son stated, we set forth those facts as disputed because of the lack of discovery and that such facts undermine the Marshalls' case.

When the listing expired with James Walton, Karen Marshall listed the subject property in January 2007 with Prudential Realty for $649,950. This listing expired March 31, 2007. During this period, the price was apparently reduced to $559,950, but the property did not sell.

Darrell Marshall became associated with the defendant realty company in March 2007. Shortly thereafter, Darrell Marshall listed the subject property, which was still owned by his sister.

The subject property sold for $550,000. Defendant realty company waived ½ of the commission. So instead of obtaining a 5% commission, 2 ½% commission was obtained for the sale. The lender, as is customary, paid a commission of $8,250 to defendant realty firm. The gross commission was $13,750 for the realty sale plus $8,250 for the loan. Darrell Marshall was paid: $3,312.50 for the realty sale and $2,062.50. Darrell felt that his sister would put up too much of a fight and therefore took a 25% split instead of his 50%.

## II. Disputed Facts

The subject property was sold at a price agreed upon by both seller and buyer. That price was below market. No one indicated that there was a default nor did the Waltons ever express that Karen was going to lose her house. Someone came up with a demand with title for payment. Defendants were not aware of such demand until advised by title. As far as defendants knew, the Marshalls wanted to buy the house so that Karen Marshall would have money to move out of their home which they sought to encourage. There was some talk about the Marshalls' home having more than one story and that being difficult for the Marshalls but so far as defendants knew the Marshalls decided to purchase their daughter's home after being presented with different options including refinancing of the home. Defendant realty firm was

broker approved with <u>many</u> mortgage companies. They did not steer the deal to one company. The Marshalls selected the one company and were experienced real estate owners and borrowers and could have gone to any loan company they wanted.

As far as the defendants knew, the Marshalls decided to purchase the home from Karen and the property closed without much adieu.

Defendants observed and were advised that Darrell Marshall and Karen Marshall were feuding before the closing. Karen Marshall told Bette Walton that she did not want Darrell Marshall to be paid any commission. Bette Walton told her that she could not discuss Darrell's arrangement with her. The commission split occurred per Darrell's wishes.

While Darrell Marshall was new to the real estate brokerage business, he had experience in real estate transactions and had demonstrated his knowledge of real estate and real estate loans to both Bette Marshall as well as his peers and fellow associates. Both seller and buyers were <u>very experienced in real estate transactions and loan transactions. They owned many houses and had done many loans.</u> Much to do is made about a written letter by James Walton where he promises to give a rebate on the prepayment penalty in the event that the Marshalls sell the house in the future. It is not unusual for a broker to do this inasmuch he is going to be receiving a commission on the sale.

### III. <u>Disputed Legal Issue</u>

James Walton was neither salesman nor broker and therefore not liable as a matter of law. We are not aware of any other dispute concerning any other legal issues.

### IV. Witnesses to be called

Wilton Marshall, Willie Mae Marshall, Darrell Marshall, Karen Marshall, James Walton and Bette Carr Walton are likely to be witnesses. Defendants may call four rebuttal witnesses, depending on what the above-witnesses say: (1) two witnesses regarding the sophistication of the Marshalls, parents and children; (2) loan processor; (3) notary public; (4) and real estate agent knowledgible of prices and market in the subject area. Undersigned counsel assumes that there are no authentication issues with respect to listings. Plaintiffs' counsel produced documents with initial disclosure and advised that he had no other documents

### V. Estimated time of trial

Undersigned counsel is without basis to know how long cross-examination of 4 Marshalls will take. Thus, estimate is 2 to 4 days.

### VI. Other matters

E&O covers negligence claims. The insurance company ignored our tender but contacted plaintiff's counsel and told defendants that there was no coverage. The state law claims were not simply stayed by the bankruptcy; they were discharged. Defendants do not have finances to pay plaintiffs if they believed claim had merit. Defendants do earn living from real estate business and this lawsuit threatens their licensure inasmuch as a finding of fraud would likely suspend if not terminate their licensure.

Dated: February 5, 2010                         LAW OFFICES OF BARON J. DREXEL

                                                By:_____/s/_____
                                                    Baron J. Drexel
                                                    Attorney for the Debtors